## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| | : | |
| **RANDY BULLOCK**, individually and on behalf of all others similarly situated, | : : : | Case No: 1:23-cv-492 Hon. Paul L. Maloney |
| Plaintiff, | : : | |
| v. | : : | |
| **KALKASKA SCREW PRODUCTS, INC.**, | : : : | |
| Defendant. | : : | |

## STIPULATED ORDER APPROVING FLSA SETTLEMENT

This matter is before the Court on the Parties' submission of the proposed settlement that the Parties reached and memorialized in the Settlement Agreement and Specific Release ("Settlement" or "Agreement"), attached hereto as **Exhibit 1**.

1.    Having reviewed the Parties' Agreement, and the pleadings and papers on file in this action, and for good cause established therein, the Court enters this Order approving the Settlement, including the proposed Service Award, and the proposed attorneys' fees and expense reimbursements to Plaintiff's Counsel, as a fair and reasonable resolution of this lawsuit.

2.    The captioned action asserts unpaid overtime claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, on behalf of non-exempt employees of Defendant, Kalkaska Screw Products, Inc. (hereinafter, "Defendant").

3.    On May 11, 2023, representative Plaintiff Randy Bullock filed this action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiff initiated this action on behalf of himself and all other persons similarly situated, seeking damages for alleged violations of the FLSA (hereinafter referred to as "Plaintiffs' Lawsuit").  *See* ECF No. 1.  In general, Plaintiff claims that Defendant failed to properly calculate its employees' overtime rates under the FLSA.  Defendant denies the claims brought by Plaintiff.

4.    After engaging in substantial informal discovery and expert damage calculations, the parties agreed to attempt to negotiate resolution of this matter. The Parties engaged in direct negotiations over a period of several weeks.

5.    The Settlement will cover the representative Plaintiff and all of the Eligible Employees who elect to participate in the Settlement by depositing their Settlement Payments. There are approximately 107 Eligible Employees.

6.    The Agreement provides that, in consideration of the Gross Settlement Amount, the claims of the representative Plaintiff and Eligible Employees who deposit and/or cash their Individual Settlement Payment will be dismissed with prejudice.

7.    "The circuits are split on whether the settlement of FLSA claims requires Court approval." *Reed v. M3K, LLC*, 2023 WL 8440262, at *1 (E.D. Tenn. Dec. 5, 2023) (*comparing, e.g., Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 256 (5th Cir. 2012) (no Court approval required) *with Cheeks v. Freeport*

2

*Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (requiring Court approval) *and Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (same); *see also Barbee v. Big River Steel, LLC*, 927 F.3d 1024 (8th Cir. 2019) (no Court approval of attorneys' fees required).

8.      A growing number of district courts in other circuits have recently analyzed with more scrutiny whether court-approval of FLSA settlements is required, and many have concluded that approval is not required. *See e.g.*, *Corbett v. Pub. Employees' Ret. Sys.*, 2024 WL 518895 (D. Nev. Feb. 9, 2024) ("Rule 41(a)(1)(A) and FLSA's text do not require judicial approval of individual FLSA settlements, and in doing so, it joins the growing number of courts which hold the same."); *Walker v. Marathon Petroleum Corp.*, 2023 WL 4837018 (W.D. Pa. July 28, 2023) (judicial approval is not required for settlement of a bona-fide wage dispute under the FLSA, for either a single plaintiff agreement or a collective action agreement); *Evans v. Centurion Managed Care of Arizona LLC*, 2023 WL 5095201 (D. Ariz. Aug. 9, 2023); *Regalado v. Albuquerque Mail Serv., Inc.*, 2023 WL 3649001 (D. N.M. May 25, 2023); *Alcantara v. Duran Landscaping, Inc.*, 2022 WL 2703610, at *1 (E.D. Pa. July 12, 2022).

9.      The Sixth Circuit has not decided the issue. Some district courts in this Circuit recently reached the same conclusion that Court approval is not required. *See Askew v. Inter-Continental Hotels Corp.*, 5:19-cv-24, 2022 WL 3161927 (W.D. Ky. Aug. 8, 2022) (no Court approval required); *see also Reed v.*

*M3K, LLC*, 2023 WL 8440262 (E.D. Tenn. Dec. 5, 2023) (same). But other courts in this district, including this Court, have historically found it appropriate to review FLSA settlements for approval at the Parties' request. *See, e.g., Downard v. Reno's, Inc*., Case No. 16-cv-927 (W.D. Mich., ECF No. 63) (J. Maloney). Until the Sixth Circuit addresses the issue, out of an abundance of caution, the Court reviewed the Parties' Agreement.

10.    The Court finds that the proposed Settlement is fair and reasonable and satisfies the standard for approval under § 16(b) of the FLSA, 29 U.S.C. § 216(b). The Court finds that the Settlement resulted from arms-length negotiations between experienced counsel after substantial investigation, informal discovery, and expert analysis. Plaintiff's Counsel has informed the Court that they believe the Settlement is fair, reasonable, and adequate, and in the best interests of the representative Plaintiff and Eligible Employees. The Court has considered all relevant factors, including the risk, complexity, expense, and likely duration of the litigation; the extent of investigation; the amount offered in the Settlement; and the Parties' counsel's experience and views.

11.    The Court approves the Agreement, and orders that the Settlement be implemented according to the terms and conditions of the Agreement and as directed herein. The Court grants approval of the Settlement as to the representative Plaintiff and all Eligible Employees who elect to participate in the Settlement by negotiating their settlement check.

12.    The Court approves the Service Award to representative Plaintiff Randy Bullock in recognition of his service in this action, and orders that such payment be made in the manner, and subject to the terms and conditions, set forth in the Agreement.

13.    The Court approves the payment of attorneys' fees and expense reimbursement to Plaintiffs' Counsel as provided in the Agreement, as well as the payment to the Settlement Administrator for its services, and orders that such payments be distributed in the manner, and subject to the terms and conditions, set forth in the Agreement.

14.    The Court retains jurisdiction over the action to enforce the Settlement, including settlement administration, and to later dismiss the case after the settlement payment distribution process has completed.

**SO ORDERED.**


Date:  March 21, 2024                    /s/ Paul L. Maloney
                                        Honorable Paul L. Maloney
                                        United States District Court Judge

APPROVED AS TO FORM AND CONTENT:


*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
SOMMERS SCHWARTZ, P.C.
Attorney for Plaintiff

*/s/ Dean F. Pacific*
Dean F. Pacific (P57086)
WARNER NORCROSS + JUDD
LLP
Attorney for Defendant


Dated:  March 18, 2024

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND SPECIFIC RELEASE

This Settlement Agreement and Specific Release (the "Agreement") is entered into by and between Defendant Kalkaska Screw Products, Inc. ("Defendant") and all related companies, successors, subsidiaries, affiliates, joint ventures, owners, indirect and direct parents, partners, and their respective officers, directors, shareholders, members, owners, partners, investors, potential investors, insurers, administrators, plan administrators, trustees, attorneys, representatives, managers, employees, and agents (collectively the "Released Parties"), and Plaintiff Randy Bullock, on behalf of himself and all putative collective members (collectively "Plaintiffs"). Hereinafter, Plaintiffs and Defendants are referred to collectively as the "Parties" or individually as a "Party."

WHEREAS, on May 11, 2023, Bullock filed a lawsuit against Defendants in the United States District Court for the Western District of Michigan, identified as *Randy Bullock, individually and on behalf of all others similarly situated, v. Kalkaska Screw Products, Inc.*, Case No. 1:23-cv-00492-PLM-RSK (the "Lawsuit"). The Lawsuit is assigned to the Honorable Paul L. Maloney (the "Court").

WHEREAS, in the Lawsuit, Plaintiffs allege, in sum, a claim of Defendant's willful failure to pay wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

WHEREAS, Defendants vigorously and expressly deny and continue to deny the allegations contained in Plaintiffs' Lawsuit. Nevertheless, Defendants desire to settle the Lawsuit finally on the terms and conditions set forth in this Agreement.

WHEREAS, the Parties have agreed to resolve the claims alleged in the Lawsuit by entering into this Agreement and by dismissing the Lawsuit with prejudice (as provided herein).

DocuSign Envelope ID: F2845115-D912-45D5-86A7-7032C32A4DC9

WHEREAS, the Parties were each represented by attorneys throughout the negotiations that culminated in the settlement and this Agreement, and said attorneys are experienced in handling collective actions arising under the FLSA.

WHEREAS, the Parties agree and acknowledge that this Agreement represents a fair and reasonable compromise of Plaintiffs' claims, which the Parties recognize would otherwise require extensive litigation to determine.

WHEREAS, the Parties agree that this Agreement is based upon the exchange of good and valuable consideration between them as set forth more fully herein, the adequacy or sufficiency of which is hereby acknowledged by all Parties.

NOW, THEREFORE, in sole consideration for the promises and covenants set forth herein, the Parties agree as follows:

A.    **Definitions**

1.      "Approval Order" means the order entered by the Court approving this Agreement.

2.      "Attorney's Fees and Costs" means the amount paid to Plaintiff's counsel from the Gross Settlement Amount as attorneys' fees and litigation expenses.

3.      "Effective Date" means the date upon which this Agreement is fully executed by all Parties.

4.      "Eligible Employee" means a putative collective member who is identified as an employee who will receive an Individual Settlement Payment under this Agreement.

5.      "Gross Settlement Amount" means the total amount of monies Defendants will fund to pay the Named Plaintiff, the Eligible Employees, and Plaintiffs' counsel.

6.     "Individual Settlement Payment" means each Participating Plaintiff's share of the Net Settlement Fund to be distributed to that individual via a settlement check pursuant to the terms of this Agreement and the Approval Order.

7.      "Net Settlement Fund" means the total amount of monies available to calculate Individual Settlement Payment after subtracting the Service Award and Plaintiffs' Attorney's Fees and Costs from the Gross Settlement Amount.

8.     "Participating Plaintiff" means an Eligible Employee who cashes or otherwise negotiates her Individual Settlement Payment and releases his or her claims against Defendants.

9.     "Relevant Period" means the period of time covered for purposes of calculating Individual Settlement Payments and also the period of time for which the release is applicable, which is October 31, 2021, through April 12, 2023.

10.    "Service Award" means the amount paid to the Named Plaintiff, Randy Bullock from the Gross Settlement Amount, and in addition to her Individual Settlement Payment.

11.    "Settlement Administrator" means the third-party entity retained to perform the duties necessary to send the Settlement Notice and Individual Settlement Payments to each Eligible Employee.

12.    "Settlement Notice Packet" means the mailing the Settlement Administrator will send to each Eligible Employee containing a cover letter and the Individual Settlement Payment.

**B.     Defendants' Payment Obligations**

1.     <u>Gross Settlement Amount</u>.   In consideration for the dismissal with prejudice of the Lawsuit as well as the release of claims effected by this Agreement and other good and valuable consideration, Defendant shall pay a maximum of Fifty Six Thousand Two Hundred Fifty Dollars

3

DocuSign Envelope ID: F3845115-0612-45D5-8687-7083C32A4D29

and No Cents ($56,250.00) to settle the Lawsuit on a common fund settlement structure. Subject to the terms of this Agreement, the Gross Settlement Amount is inclusive of payment for: (a) all Eligible Employees, or their respective authorized legal representatives; (b) the Service Award approved by the Court for the Named Plaintiff; (c) all Attorneys' Fees and Costs approved by the Court, including those in connection with securing Court approval of this Agreement, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Agreement; (d) fees and costs incurred by the Settlement Administrator; and (e) the Participating Plaintiffs' share of applicable federal, state and local taxes required to be withheld by Defendant. The Gross Settlement Amount shall be the maximum amount that Defendants or the Released Parties (as defined below) are required to pay to settle the Action and assumes 100% of the Eligible Employees cash or otherwise negotiate their checks and become Participating Plaintiffs.

2.    <u>Employer's Withholdings</u>. Defendant will be responsible for the employer's share of taxes for settlement proceeds distributed to Participating Plaintiffs.

**C.    <u>Timing of Payments</u>**

1.    Within fourteen (14) days after the entry of the Approval Order, Defendant shall fund the entirety of the Net Settlement Fund.

2.    Within fourteen (14) days after the entry of the Approval Order, Defendant shall pay the Service Award to the Named Plaintiffs by First Class U.S. Mail and the Attorneys' Fees and Costs to Plaintiffs' counsel via wire transfer.

**D.    <u>Settlement Administration</u>**

1.    <u>Selection of Settlement Administrator</u>. The Parties have chosen Atticus Administration, LLC to serve as Settlement Administrator. The Settlement Administrator has

agreed to conduct settlement administration for a total of Two Thousand Five Hundred Dollars and No Cents ($2,500.00).

2.    <u>Settlement Administrator Responsibilities</u>.   The Settlement Administrator shall be responsible for: (a) determining tax withholding amounts for the Eligible Employees, based on the Individual Settlement Payments; (b) preparing, printing, and disseminating the Settlement Notice Packet by U.S. First Class Mail (including the cover letter (in a form to be approved by counsel for Plaintiff and Defendant) and the Individual Settlement Payments); (c) copying counsel for all Parties on material correspondence and promptly notifying Plaintiffs' counsel of any material requests or communications made by any Eligible Employees who receive the Settlement Notice Packet; (d) withholding and paying all payroll tax obligations of Participating Plaintiffs in accordance with applicable law and notifying Defendants of the employer's share of payroll tax obligations in accordance with this Agreement; (e) issuing W-2 and 1099 Forms, as applicable, for all amounts paid to Participating Plaintiffs, Named Plaintiffs, and Plaintiffs' counsel; (f) ascertaining current address and addressee information for each Settlement Notice Packet returned as undeliverable or for which it receives notice that a mailed Settlement Notice Packet was otherwise not delivered; (g) referring to Plaintiffs' counsel all inquiries by the Eligible Employees which the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Administrator's duties specified herein; (h) responding to inquiries of the Plaintiffs' and Defendant's counsel; (i) promptly apprising counsel for the Parties of the activities of the Settlement Administrator; (j) maintaining adequate records of its activities, including the date of the mailing of the Settlement Notice Packets and receipt of negotiated checks, returned mail, and other communications and attempted written or electronic communications with the

DocuSign Envelope ID: F3845115-0612-45D5-8687-7033232A4B29

Eligible Employees; (k) confirming in writing to Plaintiffs' and Defendant's counsel and the Court its completion of the administration of the settlement and retaining copies of all endorsed settlement checks; (l) timely responding to communications from the Parties or their counsel; (m) issuing unclaimed (retained) funds to Defendants; and (n) such other tasks as the Parties mutually agree.

3.    <u>Reporting by Settlement Claims Administrator</u>.  Throughout the administration period, the Settlement Administrator will provide reports to the Parties, upon request by either Party, regarding the status of the distribution of the Settlement Notice Packets to Eligible Employees, the receipt of endorsed settlement checks, or any other aspect of the claims administration process.

**E.    <u>Creation and Implementation of a Qualified Settlement Fund</u>**

1.    <u>Establishing the Qualified Settlement Fund.</u>  Funds paid by Defendant pursuant to this agreement shall be deposited in an account established by the Settlement Administrator (the "Qualified Settlement Fund"), which shall be a "qualified settlement fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, <u>et</u> <u>seq</u>.  The Qualified Settlement Fund shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

2.    <u>Administering the Qualified Settlement Fund</u>.  The Settlement Administrator shall serve as Trustee of the Qualified Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Qualified Settlement Fund, including the handling of tax-related issues and payments.  The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

3.      <u>Tax Withholding and Reporting</u>.    The Settlement Administrator shall be responsible for withholding and timely remitting and reporting to the appropriate taxing authorities the employee's share of payroll taxes from the wage payments of each Participating Plaintiff.   The Settlement Administrator shall also be responsible for calculating and timely notifying Defendant of the employer's share of payroll taxes or contributions (*i.e.* FICA, FUTA, SUTA, and Medicare) relating to the wage payments of each Named Plaintiff and Participating Plaintiff, which will be paid by Defendants. Subject to the Settlement Administrator's obligation to comply with applicable laws, the Parties anticipate that any amounts designated as liquidated damages, or interest shall not be subject to withholding and shall be reported to the IRS on Form 1099.

4.      <u>Indemnification</u>.   The written contract with the Settlement Administrator shall provide for the Settlement Administrator to indemnify the Parties for any penalty or interest arising out of an incorrect calculation or late deposit or remittance of the payments set forth above.

5.      <u>Communication with Counsel</u>.   Defendant's counsel and Plaintiffs' counsel are authorized to communicate directly with the Settlement Administrator to expedite the settlement administration process.

**F.      Allocation of the Gross Settlement Amount**

1.      <u>Net Settlement Fund</u>.   The amounts approved by the Court for a Service Award, Attorney's Fees and Costs, and the costs and fees of the Settlement Administrator, shall be deducted from the Gross Settlement Amount to determine the amount of the Net Settlement Fund.

2.      <u>Allocation of Net Settlement Fund.</u>   The Net Settlement Fund will equal Twenty-Four Thousand Four Hundred Dollars and No Cents ($24,400.00). All Eligible Employees shall be paid a portion of the Net Settlement Fund pursuant to a formula which will generally differ

DocuSign Envelope ID: F3845115-0612-45D5-8687-7083C32A4B29

based on the number of workweeks worked during the Relevant Period. For the purpose of informing Eligible Employees of their Individual Settlement Payment, the estimated respective Individual Settlement Payment for each Eligible Employee shall be disclosed to each Eligible Employee in the Settlement Notice.

3. <u>Service Award.</u>   From the Gross Settlement Amount, Plaintiff's counsel shall seek a Service Award of Two Thousand Five Hundred Dollars and No Cents ($2,500.00) for Randy Bullock (the "Named Plaintiff") for his involvement in commencing and discovering the claims represented in this Lawsuit and his involvement in settlement negotiations for the benefit of all Eligible Employees. Defendant does not dispute, based on their review of all relevant factors, that the Service Award sought by the Named Plaintiff is reasonable. Any Service Award approved by the Court shall be deemed non-wage compensation in its entirety for Named Plaintiff and shall be reported by Defendants on an IRS Form 1099. Any amount of the requested Service Award not approved by the Court shall be included as part of the Net Settlement Fund.

4. <u>Attorneys' Fees and Costs.</u>   Plaintiffs' Counsel shall make an application to the Court for and award of attorneys' fees in the amount of Twenty-Three Thousand Three Hundred Fifty Dollars and No Cents ($23,350), plus an additional reasonable amount for their litigation expenses not to exceed Three Thousand Five Hundred Dollars and No Cents ($3,500.00). Defendant will not dispute that this amount of fees and costs sought by Plaintiffs is reasonable. Payment of such attorneys' fees and costs to Plaintiffs' counsel shall be made in accordance with this Agreement and shall constitute full satisfaction of any and all obligations by Defendant to pay any person, attorney or law firm for attorneys' fees or costs incurred on behalf of the Named Plaintiff and Participating Plaintiffs.   The Defendant shall report the payment of these Attorney's

Fees and Costs to Plaintiffs' counsel on an IRS Form 1099.  Any amount of the Attorney's Fees and Costs not approved by the Court shall be included as part of the Net Settlement Fund.

G.    **Payments to Eligible Employees**

1.    Timing of Payments.  Within twenty-one (21) days of the date of the Approval Order, the Settlement Administrator will transmit all Settlement Notice Packets to Eligible Employees via First Class U.S. Mail to the last known address for each Eligible Employee, or such other address provided by the Eligible Employee to the Settlement Administrator.

2.    Tax Treatment of the Settlement Payments.  The settlement payments attributed to the Eligible Employees shall be allocated 50 percent to back wages and 50 percent to liquidated damages.  The back wages shall be subject to all required employee-paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state or local-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.). The liquidated damages shall be treated as non-wage income to the Eligible Employees.  The Settlement Administrator shall report the back wage payments to the Internal Revenue Service ("IRS") on IRS Form W-2 and shall report the liquidated damages on IRS Form 1099.

3.    Tax Responsibilities, Tax Advice, and Indemnification.  Other than the withholding and reporting requirements set forth herein, the Participating Plaintiffs shall be solely responsible for any necessary reporting of their respective shares of any federal, state, and/or local income or other tax, if any, on the settlement payments.  Named Plaintiff agrees and acknowledges that she has not relied upon any advice from Defendant or Plaintiffs' counsel as to the taxability of the payments received pursuant to this Agreement. As to the payments treated and

reported as non-wages, Named Plaintiff agrees to hold Defendant harmless for any tax due or owing by her on such payments.

4.    <u>Negotiation of Settlement Checks and Retention</u>.   The negotiating of a settlement check by any Participating Plaintiff provides sufficient consideration for his or her release of claims. Eligible Employees will have ninety (90) days after the Settlement Notice Packets are mailed in which to deposit or otherwise negotiate their settlement checks. However, settlement checks not cashed or negotiated within 90 days may be reissued once if the Parties mutually agree, or if the Settlement Administrator determines that there is good cause to do so with respect to any particular settlement check(s).   If any Eligible Employee does not negotiate his or her settlement check within 90 days of issuance, or thirty (30) days after reissuance of the settlement check, whichever is later, the funds will be retained by Defendant.

Any funds remaining in the Net Settlement Fund after payment to: (a) Participating Plaintiffs; (b) the Service Award to Named Plaintiff approved by the Court; (c) the Attorney's Fees and Costs to Plaintiffs' Counsel; (d) the Settlement Administrator; and (e) applicable withheld federal, state and local income taxes withheld from payments to the Participating Plaintiffs, shall be retained by Defendant via one payment ("Retention Payment") made by the Settlement Administrator to Defendant. The Retention Payment shall be made either: (a) forty-five (45) days after the reissuance of any settlement check; or (b) one hundred fifty (150) days after the issuance of settlement checks if no settlement checks are reissued, whichever is later.

**H.    <u>Specific Release of Claims</u>**

1.    <u>Release by Plaintiffs</u>. Conditioned upon the entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, Named Plaintiff hereby agrees

DocuSign Envelope ID: F3845115-0612-45D5-8687-7083232A4D29

to dismiss the Lawsuit with prejudice, and he and all Participating Plaintiffs will release Defendant, including any and all of Defendant's predecessors, related companies, successors, subsidiaries, affiliates, joint ventures, owners, indirect and direct parents, partners, and their respective officers, directors, shareholders, members, owners, partners, investors, insurers, administrators, plan administrators, trustees, attorneys, representatives, managers, employees, and agents (collectively the "Released Parties") from any and all federal, state, and local wage-and-hour claims of any nature whatsoever that accrued during their employment with Defendant, known or unknown, including, but not limited to, all federal, state, and local claims for overtime, minimum wage, and related penalties, interest, liquidated damages, attorneys' fees, and costs. The release of claims applies from October 31, 2021, through April 12, 2023. Plaintiffs also knowingly and voluntarily waive their rights, if any, to recover and/or receive any additional damages or other relief for any claim brought by the Department of Labor and/or any state or local agency on their behalf under all federal, state, and local laws which relate to the claims covered by this Agreement. Notwithstanding the foregoing, nothing in this Agreement is intended to operate as, nor shall be construed as, a release or waiver of any rights and/or claims that cannot be released or waived as a matter of law. This release also shall not limit Plaintiffs' ability to communicate with any Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency as required by law.

2.    <u>Release Language on Settlement Checks</u>.  Each Individual Settlement Payment issued to Eligible Employees will contain the following release language on the back of the check:

> I knowingly and voluntarily release, waive, and discharge Kalkaska Screw Products, Inc. and all other Released Parties, from any and all federal, state, and local wage-and-hour claims of any nature whatsoever that accrued during my employment working at Kalkaska Screw Products, Inc., between October 31, 2021,

through April 12, 2023, including, but not limited to, all federal, state, and local claims for overtime, minimum wage, and related penalties, interest, liquidated damages, attorneys' fees, and costs.

By negotiating the settlement check, all Participating Plaintiffs are fully bound by the release described in this Agreement.

3.    <u>No Admission of Liability and Non-Admissibility</u>. By entering into this Agreement, Plaintiffs understand that Defendant does not admit, and specifically denies, any liability or wrongdoing as alleged in the Lawsuit, and that Defendant is entering into this Agreement solely for the purposes of avoiding costs of litigation and amicably resolving all disputes and causes of action brought by Plaintiffs against Defendant. This Agreement does not constitute an admission by Defendant or by any Released Party of any violation of any federal, state, local or common law or statute. In addition, this Agreement does not constitute an admission by Defendant or any Released Party of any violation of any contract or other legal duty. Neither this Agreement nor anything in this Agreement shall be construed to be admissible, or shall be admissible, in any proceeding as evidence of wrongdoing by Defendant or any Released Party.

**I.    <u>Dismissal of Lawsuit</u>**

1.    <u>Stipulated Approval Order</u>. Within 14 days of the Effective Date of this Agreement, the Parties will submit to the Court a stipulated order for approval of this Agreement. If the Court does not enter the stipulated order within 14 days, the Parties agree to prepare and file a joint motion to approve this Agreement. If for any reason the Court will not approve this Agreement as drafted, the Parties agree to work together in good faith to reform this Agreement as necessary in order for it to be approved by the Court. To the extent the Court will not approve this Agreement, and the Parties are unable to reform the Agreement in spite of their good-faith efforts to do so, this

DocuSign Envelope ID: F3845115-0612-45D5-8687-7083232A4D29

Agreement shall be null and void.

      2.    <u>Stipulated Order of Dismissal</u>. Upon the Court entering its Approval Order, and the Defendant meeting its financial obligations set forth in Section C, above, the Parties will sign and submit a stipulated order dismissing the Lawsuit with prejudice.

**J.**    **<u>Miscellaneous</u>**

      1.    The Parties agree that this Agreement is enforceable in a court of law. The Parties acknowledge that this Agreement constitutes a complete accord with respect to all claims, demands, or causes of action that have been released by this Agreement and that the Parties' sole remedy for breach of this Agreement is specific enforcement of its terms.

      2.    If any court shall determine that any provision herein is unenforceable, the Parties agree that any such provision, or part thereof, shall be reformed and construed consistent with the apparent purpose of the provision in order to avoid its unenforceability or, in the event that reformation is not possible, the provision shall be severed and all remaining provisions shall remain in full force and effect.

      3.    Plaintiffs wholly rely upon their own judgment in executing this Agreement. Plaintiff has had an opportunity to consult their attorneys and understand that if he went forward with a claim she could have a better result than that achieved here, the same result as achieved here, or a worse result than that achieved here. Plaintiff has carefully read this Agreement in its entirety and voluntarily and willingly signs the same as a free act.

      4.    The Parties agree that this Agreement is to be construed in accordance with the laws of the State of Michigan.

DocuSign Envelope ID: F3845115-0812-45D5-8697-7083C32A4DC9

5.      This Agreement may be executed in counterparts and by facsimile or scanned document, each of which shall be considered equally authentic and together shall be deemed to be one in the same document.

6.      The Parties acknowledge that the promises and covenants contained in this Agreement are the sole and total agreement of the Parties with respect to the matters set forth herein; that there are no covenants, promises, agreements or representations with respect to the matters set forth herein other than as contained in this Agreement; and that in accepting the terms of this Agreement, Plaintiffs have not relied upon any promises, covenants, agreements or representations with respect to the matters set forth herein other than as expressed in this Agreement.

7.      The Parties agree that the terms of this Agreement cannot be changed, altered, modified, amended, or added to except in a writing that specifically refers to this Agreement and is signed by the Parties. The Parties expressly waive application of any local, state, federal, or foreign law, statute or judicial decision allowing verbal modifications, amendments, or additions to a contract notwithstanding an express provision requiring a writing signed by the Parties.

8.      This Agreement shall be inadmissible as evidence in any proceeding, except in an action or proceeding to approve, interpret, or enforce its terms.

9.      **THE PARTIES CERTIFY THAT THEY HAVE READ ALL OF THIS SETTLEMENT AGREEMENT AND FULLY UNDERSTAND ALL OF THE TERMS USED AND THEIR SIGNIFICANCE AND HAVE SIGNED THIS SETTLEMENT AGREEMENT VOLUNTARILY.**

Randy Bullock, Named Plaintiff

3/13/2024

Date


Defendant Kalkaska Screw Products, Inc.


_____        _____

                                        Date

By: _____

Its: _____

_____                    _____
Randy Bullock, Named Plaintiff                      Date


Defendant Kalkaska Screw Products, Inc.

By: ___GREG  GUTOWSKY___                            ___3|14|24___
                                                    Date
Its: ___PRESIDENT___


15